IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| M.L.G.G.; R.G.S., | Civ. No. 6:25-cv-02012-AA |
| Petitioners, | **OPINION & ORDER** |
| v. | |
| CAMILLA WAMSLEY, Seattle Field Office Director, Immigration and Customs Enforcement and Removal Operations ("ICE/ERO"); TODD LYONS, Acting Director of Immigration and Customs Enforcement ("ICE"); U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT; KRISTI NOEM, Secretary of the Department of Homeland Security ("DHS"); U.S. DEPARTMENT OF HOMELAND SECURITY; PAMELA BONDI, Attorney General of the United States, | |
| Respondents. | |

AIKEN, District Judge.

This case comes before the Court on a Petition for Writ of Habeas Corpus filed by Petitioners M.L.G.G. and R.G.S. ECF No. 1. The Court granted the Petition as to R.G.S. in an Opinion & Order issued on December 5, 2025. ECF No. 37. The Court held an evidentiary hearing on December 8, 2025, to consider the Petition as to M.L.G.G. ECF No. 40. At the conclusion of the hearing, the Court granted the

Petition and ordered M.L.G.G.'s immediate release subject to reasonable conditions. This Opinion and Order serves to memorialize the Court's oral ruling.

## BACKGROUND

The Court heard testimony at the evidentiary hearing from Petitioner M.L.G.G. and Natalie Lerner, Petitioner's immigration attorney. Respondents called no witnesses. The Court considered the witnesses' demeanor and manner of testifying and finds the testimony of both M.L.G.G. and Ms. Lerner fully credible.

M.L.G.G. is a native and citizen of Guatemala. Holani Decl. ¶ 3. ECF No. 8. M.L.G.G.'s native language is Mam and she speaks "some basic Spanish." M.L.G.G. Decl. ¶ 2. ECF No. 30. On December 16, 2016, she applied for admission into the United States from Mexico with her father at an El Paso port of entry and was deemed inadmissible and detained. Holani Decl. ¶ 3. On December 20, 2016, she was issued a Notice to Appear ("NTA") by U.S. Customs and Border Protection ("CBP") and on December 22, 2016, she was paroled due to lack of bed space. *Id.*

On July 27, 2017, M.L.G.G. failed to appear for the non-detained docket of the immigration court in Miami, Florida. Holani Decl. ¶ 4. The Immigration Judge ("IJ") noted that she had been properly notified of the time and place of the hearing and found that DHS had provided sufficient evidence of her inadmissibility and ordered her removed to Guatemala. *Id.*

M.L.G.G. was fourteen years old at the time of the removal order and testified that she was unaware that she had an obligation to appear in immigration court and

was unaware of the removal order until she was arrested by ICE on October 30, 2025. M.L.G.G. ¶¶ 3,5, 17.

On October 30, 2025, M.L.G.G. was a passenger in a van going to a worksite. Respondents assert that ICE officers ran the van's plates against immigration databases and found that the registered owner "came up in databases as [having] a prior expedited removal order from the United States." Holani Decl. ¶ 5. ICE officers conducted a stop of the vehicle and took the driver of the vehicle, who was the registered owner, into custody. *Id.* Respondents assert that "[d]uring the stop and questioning of the driver, Officers noticed several passengers moving in the vehicle and making motions indicative of flight from the stop." *Id.*

Respondents assert that, during a field interview, M.L.G.G. "volunteered to ERO [Enforcement and Removal Operations] Officers that she had no immigration status to remain in the United States." Holani Decl. ¶ 5. Respondents assert that officers "conducted further database checks on Petitioner M.L.G.G. and determined that she had a final order of removal, served her a Form I-205, Warrant of Removal, and detained her under INA Section 241." *Id.* M.L.G.G., who speaks limited Spanish, denies that she made such an admission and asserts that she told the officers only her name, the city where she lives, that she was not a minor, and that she spoke Mam. M.L.G.G. Decl. ¶ 12-13. M.L.G.G. was taken into custody and detained. Holani Decl. ¶ 5.

## LEGAL STANDARD

Under 28 U.S.C. § 2241, federal district courts "within their respective jurisdictions" have the authority to hear applications for habeas corpus by any person who claims to be held "in custody in violation of the Constitution or laws or treaties of the United States." The "essence of habeas corpus is an attack by a person in custody upon the legality of that custody," and thus to be within the "core of habeas corpus," a petitioner must seek "either immediate release from that confinement or the shortening of its duration." *Preiser v. Rodriguez*, 411 U.S. 475, 484, 489 (1973).

## DISCUSSION

In the Petition for Writ of Habeas Corpus, Petitioners assert claims for (1) violation of their Fourth Amendment right to be free from unreasonable seizures; (2) multiple claims under the Administrative Procedure Act ("APA"); (3) violation of their Fifth Amendment due process rights. The Court resolved Respondents' challenge to the Court's jurisdiction in the previous Opinion & Order.

M.L.G.G. was detained pursuant to 8 U.S.C. § 1231. Resp. at 5 (ICE officers "detained [M.L.G.G.] under INA Section 241.").[1] ECF No. 7. Petitioner asserts that her detention under that statute violates her Fifth Amendment due process rights.

8 U.S.C. § 1231(a)(1) provides that when a noncitizen is ordered removed, the Attorney General "shall remove the [noncitizen] from the United States within a period of 90 days (in this section referred to as the 'removal period.')." The removal period begins to run, as relevant to this case, on "[t]he date the order of removal

---

[1] INA Section 241 has been codified as 8 U.S.C. § 1231.

becomes administratively final." 8 U.S.C. § 1231(a)(1)(B)(i). When, as here, the order is entered *in absentia*, it becomes administratively final immediately upon entry of the order. 8 C.F.R. § 1241.1(e).

If the noncitizen does not leave or is not removed during the removal period, the noncitizen "shall be subject to supervision" pending removal and the statute supplies a list of requirements for that supervision, which are supplemented by additional regulations. 8 U.S.C. § 1231(a)(3).

Here, there is no dispute that M.L.G.G.'s order of removal, which was issued *in absentia*, became administratively final in July 2017 and that she was not removed within ninety days of the order becoming final. Rather, Respondents contend that they can toll the removal period for the years between when the removal order became final and when ICE officers arrested M.L.G.G.

Although, the removal period "shall be extended beyond a period of 90 days and the [noncitizen] may remain in detention during such extended period if the [noncitizen] . . . conspires or acts to prevent the [noncitizen]'s removal subject to an order of removal" under 8 U.S.C. § 1231(a)(1)(C), courts have held that a failure to appear at removal proceedings is an act sufficient to trigger extension of the removal period. *See, e.g., Farez-Espinoza v. Chertoff*, 600 F. Supp.2d 488, 501 (S.D.N.Y. 2009). Rather the "overwhelming" weight of authority applying § 1231(a)(1)(C) indicates that "the removal period is subject to tolling where the noncitizen acts to prevent his or her removal through judicial action, or by demonstrating some sort of bad faith failure to cooperate." *Guan Zhao Lin v.*

*Holder*, No. 10 Civ. 4316(RMB)(JLC), 2010 WL 2836144, at *3 (S.D.N.Y. July 2, 2010) (internal quotation marks and citation omitted, alterations normalized); *see also Farez-Espinoza*, 600 F. Supp.2d at 501 (noting that courts have read § 1231(a)(1)(C) "narrowly" and applied it only "where the alien has demonstrated some sort of bad faith failure to cooperate," and "committed some affirmative and misleading act to thwart the removal process or expressly refused to cooperate," and collecting cases). Petitioner's failure to appear is not the sort of bad faith action that would allow extension of the removal period. Plaintiff credibly testified that she was not aware of the order of removal—which was issued *in absentia* when she was a child—until she was arrested and so could not have affirmatively acted to thwart its enforcement.

In addition, the removal period runs from the time the removal order becomes administratively final and not from the time the noncitizen is taken into custody. *Ulysse v. Dept. of Homeland Security*, 291 F. Supp.2d 1318, 1325-26 (M.D. Fla. 2003). The ninety days therefore began to run in July 2017 and not when she was arrested by ICE in late October 2025.

Here, Petitioner's order of removal became administratively final in July 2017 and she is entitled to release because she is being detained after the expiration of the ninety-day removal period. The Court therefore GRANTS the Petition for Writ of Habeas Corpus as to M.L.G.G.

## CONCLUSION

For the reasons set forth above the Petition, ECF No. 1, is GRANTED as to Petitioner M.L.G.G. At the hearing, Respondents were ORDERED to immediately release Petitioner M.L.G.G. subject to reasonable conditions of release as set forth in the 8 U.S.C. § 1231 and its accompanying regulations.

It is so ORDERED and DATED this ___10th___ day of December 2025.

      /s/Ann Aiken
      ANN AIKEN
      United States District Judge